UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT AKRON

| | |
|---|---|
| **KATHRYN R. GOOD**<br>2187 Marhofer Avenue<br>Stow, OH 44224<br><br>     Plaintiff,<br><br>v.<br><br>**SPECIALIZED LOAN SERVICING, LLC**<br>c/o United Agent Group Inc.<br>119 E. Court Street<br>Cincinnati, Ohio 45202<br><br>     Defendant. | Case No.<br><br><br><br><br><br>**COMPLAINT**<br><br>**(DEMAND FOR A JURY TRIAL)** |

Plaintiff Kathryn R. Good, by and through counsel, for her Complaint against Defendant Specialized Loan Servicing, LLC states as follows:

### WHY PLAINTIFF IS FILING THIS CASE

1.   Like many people, Plaintiff Kathryn R. Good ("Plaintiff") encountered financial difficulties due to medical hardship and job loss and as a result fell behind in her mortgage payments.  In March of 2019, Plaintiff remitted funds to Specialized Loan Servicing, LLC ("Defendant") that were sufficient to bring her mortgage loan current. Since March of 2019, Plaintiff has remitted all mortgage payments due and owing on the mortgage loan.  Nevertheless, Defendant has improperly assessed fees to Plaintiff's mortgage loan; continued to send inaccurate notices to Plaintiff stating that the mortgage loan is in default; and improperly threatened to foreclose on the mortgage loan.

### PARTIES, JURISDICTION, AND VENUE

2.   Plaintiff is the owner of real property located at 2187 Marhofer Avenue, Stow, OH

44224 (the "Home").

3. On July 23, 2004, in order to purchase the Home, Plaintiff borrowed money and executed a note in the amount of $98,000.00 payable to Fairway Independent Mortgage Corp. (the "Note"). To secure payment of the Note, Plaintiff granted a contemporaneous mortgage lien on the Home (the "Mortgage").  A copy of the Note and a copy of the Mortgage are attached as ***Plaintiff's Exhibit 1.*** The Note and Mortgage are collectively referred to hereinafter as the "Loan".

4. Plaintiff currently maintains the Home as her primary, principal residence, and has so maintained the Home at all times relevant to this Complaint.

5. Nonparty Federal Home Loan Mortgage Corporation ("Freddie Mac") is the present owner of the Loan.

6. Nonparty CitiMortgage, Inc. ("Citi") was a previous servicer of the Loan.

7. Nonparty Ditech Financial LLC fka Green Tree Servicing LLC ("Ditech") was a previous servicer of the Loan.

8. Defendant is the current servicer of the Loan.

9. Citi, Ditech and Defendant have serviced the Loan on behalf of Freddie Mac at all times relevant herein.

10. At all times relevant herein, Defendant has acted and currently acts as the agent for Freddie Mac.

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

12. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became

effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36 of Regulation X.

13. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

14. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff maintains the Home as her primary residence within this District.

## SUMMARY OF CLAIMS

15. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

16. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

17. The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

18. Defendant is subject to the aforesaid regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

19. Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

20. Plaintiff is asserting a claim for relief against Defendant for violating 12 U.S.C. §§ 2605(k)(1)(C) and (E) for violations of 12 C.F.R. §§ 1024.35 and 1024.36 under Regulation X as set forth, *infra*.

21. Plaintiff asserts a state law claim for breach of contract against Defendant.

3

**BACKGROUND**

22. On June 25, 2014, Plaintiff filed for protection under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Ohio, in the matter assigned case number 5:2014-bk-51650 (the "Bankruptcy").

23. The Loan was current at the time the Bankruptcy was filed. The relevant portion of Citi's proof of claim filed on November 5, 2014 in the Bankruptcy is attached as *Plaintiff's Exhibit 2.*

24. On February 14, 2017, a supplemental proof of claim was filed by Ditech in the Bankruptcy for post-petition arrearages. A copy of the supplemental proof of claim is attached as *Plaintiff's Exhibit 3.*

25. The supplemental proof of claim was subsequently paid by the Chapter 13 Trustee in the Bankruptcy. A copy of the Chapter 13 Standing Trustee's Final Report and Account is attached as *Plaintiff's Exhibit 4.*

26. On January 25, 2019 Defendant filed a Motion for Relief from Stay (the "Motion") in the Bankruptcy stating that Plaintiff had not paid the post-petition mortgage payments due for November 1, 2018 through January 1, 2019. A copy of the Motion for Relief from Stay is attached as *Plaintiff's Exhibit 5.*

27. The Motion stated that the total amount of post-petition mortgage payments was $1,785.94. See *Plaintiffs Exhibit 5.*

28. On March 13, 2019 Plaintiff remitted $2,381.84 to Defendant ("March Payment #1").

29. March Payment #1 consisted of the five mortgage payments due for November 2018 through February 2019.

30. On March 20, 2019 Plaintiff remitted $595.46 to Defendant ("March Payment #2").

31. March Payment #2 consisted of the mortgage payment due for March 2019.

32. Effective March 20, 2019, all mortgage payments due on the Loan had been paid by Plaintiff.

33. Plaintiff timely made her mortgage payments due for April of 2019 through August of 2019.

34. Despite the above, Defendant sent correspondence to Plaintiff dated September 17, 2019 stating that the Loan is in default as a result of Plaintiff's failure to pay the August 1, 2019 mortgage payment and as a result Defendant may commence foreclosure on the Loan. A copy of such correspondence is attached as *Plaintiff's Exhibit 6.*

### RETENTION OF COUNSEL AND ATTEMPTS FOR DEFENDANT TO CORRECT ERRORS

35. Upon discovering that Defendant was not applying her mortgage payments properly, Plaintiff hired Dann Law to investigate potential errors relating to Defendant's servicing of the Loan.

36. On or about September 6, 2019, Plaintiff, through counsel, sent correspondence to Defendant consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. §1024.36 requesting detailed information related to the Loan (the "RFI"). The RFI is attached as *Plaintiff's Exhibit 7*.

37. Defendant received the RFI on September 20, 2019 at its designated address for such. USPS tracking information for the RFI is attached as *Plaintiff's Exhibit 8.*

38. On or about September 27, 2019 Defendant sent correspondence in response to the RFI (the "Response to the RFI"). The Response to the RFI sans enclosures is attached as *Plaintiff's Exhibit 9.*

39. The Response to the RFI failed to include a complete life of loan transaction history.

40. On or about October 1, 2019, Plaintiff, through counsel, sent correspondence to Defendant consisting of or otherwise comprising a notice of error pursuant to, *inter alia*, 12 C.F.R. § 1024.35(b)(2) and 12 C.F.R. § 1024.35(b)(5) ("NOE #1"), asserting that Defendant failed to properly apply accepted payments and imposed improper fees on the Loan. NOE #1 sans enclosures is attached as **Plaintiff's Exhibit 10.**

41. Defendant received NOE #1 on October 7, 2019 at its designated address for such. USPS tracking information for NOE #1 is attached as **Plaintiff's Exhibit 11**.

42. On or about October 8, 2019 Defendant sent correspondence in acknowledgement of NOE #1 (the "Acknowledgement"). The Acknowledgement is attached as **Plaintiff's Exhibit 12.**

43. On or about December 13, 2019 Defendant sent correspondence in response to NOE #1 (the "Extension"). The Extension is attached as **Plaintiffs' Exhibit 13**.

44. In the Extension, Defendant stated that further research was required and a response would be issued within fifteen business days. See **Plaintiff's Exhibit 13.**

45. On or about January 8, 2020 Defendant sent correspondence in response to NOE #1 (the "Response to NOE #1"). The Response to NOE #1 is attached as **Plaintiffs' Exhibit 14**.

46. In the Response to NOE #1, Defendant provides non-responsive, vague, conclusory, and contradictory information relating to the application of Plaintiff's mortgage payments and the fees charged to the Loan, specifically:

   (a) Defendant advises that in order to properly research Plaintiff's claims of misapplied payments they require the proper proof of payments which can be either be the

6

front and back copies of cancelled checks or complete bank statements which completely ignores the complete bank statements enclosed within NOE #1; and,

    (b)    Defendant then asserts in a conclusory fashion that the payments were properly applied to the Loan; the fees and expenses assessed on the Loan are valid; and that no error occurred in the servicing of the Loan despite the statement that they did not have sufficient proof from Plaintiff to properly research the errors.

See *Plaintiff's Exhibit 14*.

47.    As Defendant did not provide the complete life of loan transaction history in the Response to the RFI and correct the errors alleged through NOE #1, Plaintiff sent another notice of error, pursuant to 12 C.F.R. § 1024.35 on or about February 18, 2020 ("NOE #2") alleging that Defendant failed to provide a proper response to the RFI and NOE #1 and that the errors alleged in NOE #1 still persisted. A true and accurate copy of NOE #2 sans enclosures is attached as *Plaintiff's Exhibit 15*.

## THE IMPACT ON PLAINTIFF

48.    Defendant failed to properly service the Loan on behalf of Freddie Mac which has directly and proximately caused the following damages to Plaintiff:

    (a)    Defendant assessed improper fees and expenses on the Loan as a result of the misapplied payments;

    (b)    Plaintiff incurred attorneys' fees and postage costs in the preparation and mailing of NOE #1 and NOE #2; and,

    (c)    Defendant's conduct has caused Plaintiff to suffer great emotional distress driven by the fear of Defendant continuing to demand amounts over and beyond what the Loan provides for after Plaintiff made all the mortgage payments due and owing on the

Loan; and losing the Home to foreclosure as a result, which has resulted in anxiety and other mental distress.

### ADDITIONAL EVIDENCE OF DEFENDANT'S PATTERN AND PRACTICE OF VIOLATIONS OF REGULATION X

49. Defendant's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Defendant's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

50. At the time of the filing of this Complaint, Defendant has had at least One Thousand and Sixty Seven (1,067) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" concerning mortgages and at least One Thousand (1,000) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "trouble during payment process" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database (http://www.consumerfinance.gov/complaint database/).

51. Plaintiff has reviewed the CFPB's consumer complaint database and has identified fifteen (15) complaints from other borrowers alleging RESPA violations by Defendant which evidence conduct demonstrating that Defendant has engaged in a pattern and practice of violating RESPA with respect to other borrowers. *The fifteen (15) aforementioned consumer complaints are attached as **Plaintiff's Exhibit 16** with the date, details, and a narrative disclosed by the consumer set forth in each complaint.*

### COUNT ONE: BREACH OF CONTRACT

52. Plaintiff restates and incorporates herein the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein

53. The Loan is an enforceable contract between Plaintiff and Defendant.

54. Defendant breached the Loan by failing to honor the express terms of the Loan, by failing to properly apply Plaintiff's mortgage payments and improperly trying to collect amounts not authorized by the Loan.

55. Plaintiff performed her obligations pursuant to the Loan by making payment of amounts properly due and by otherwise meeting her obligation imposed by the parties' contract.

56. Defendant breached the Loan. The breach is one of bad faith as demonstrated by the above allegations. Defendant failed to properly apply Plaintiff's mortgage payments and improperly assessed fees and charges to the Loan.

57. Defendant owed Plaintiff a duty to handle the Loan properly and in accordance with the parties' agreement. Defendant breached their duty to Plaintiff by failing to properly apply Plaintiff's mortgage payments and attempting to collect amounts not due under the terms of the Loan.

58. Plaintiff has suffered actual damages as detailed, *supra*, including but not limited to, incurring lost time, expenses, and attorneys' fees in attempts to have Defendant correct their breach. Plaintiff continues to suffer economic and non-economic damages as a result of the breach including continued emotional distress.

59. Plaintiff is entitled to actual damages, reasonable attorneys' fees and costs from Defendant.

**COUNT TWO: VIOLATION OF RESPA**

**[Violation of 12 C.F.R. § 1024.35 (e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failure to reasonably investigate and properly respond to a notice of errors]**

60. Plaintiff restates and incorporates the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

9

61. 12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

62. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

63. 12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, of receipt.

64. 12 C.F.R. § 1024.35(e)(3)(ii) provides that a servicer may extend the time period for responding by an additional fifteen (15) days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

65. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

66. A servicer shall not "fail to take timely action to respond to a borrower's requests

to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" 12 U.S.C. §§ 2605(k)(1)(C).

67. A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."12 U.S.C. §§ 2605(k)(1)(E).

68. NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a).  See *Plaintiff's Exhibit 10*.

69. Plaintiff sent NOE #1 to Defendant at their self-designated address for the receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address") and Defendant received the same at such address.  See *Plaintiff's Exhibits 10-11*.

70. Through NOE #1, Plaintiff alleged that Defendant committed errors by failing to properly apply Plaintiff's mortgage payments and improperly charging fees to the Loan. See *Plaintiff's Exhibit 10*.

71. Defendant received NOE #1 at the Designated Address on October 7, 2019. See *Plaintiff's Exhibit 11*.

72. Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Defendant was required to respond to NOE #1 within thirty (30) business days of their receipt of NOE #1.

73. Plaintiff did not receive a response to NOE #1 within the required time frame pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C).  See *Plaintiff's Exhibits 13-15*.

74. Defendant did not notify Plaintiff of any extension to the time limit within the required time frame pursuant to 12 C.F.R. § 1024.35(e)(3)(ii).  See *Plaintiffs' Exhibits 13 and 15.*

75. Specifically, Defendant did not notify Plaintiff of any extension until more than fifteen (15) business days after the required deadline in violation of 12 C.F.R. § 1024.35(e)(3)(ii).

As a result, the Response to NOE #1 was not provided until more than thirty (30) business days after the required deadline in violation of 12 C.F.R. § 1024.35(e)(3).

76. The Response to NOE #1 failed to satisfy the requirements of either 12 C.F.R. §§ 1024.35(e)(1)(A) or 1024.35(e)(1)(B). See **Plaintiff's Exhibits 14-15**.

77. Defendant, through the Response to NOE #1, did not acknowledge that any of the alleged errors occurred, correct the errors, and state the date of such correction. See **Id**.

78. Defendant, through the Response to NOE #1, claimed that they were unable to properly research Plaintiff's claims of misapplied payments due to the proof of payments enclosed with the NOE being insufficient and that the beginning pages of the bank statements provided were pictures and cannot be used by Defendant. See **Plaintiff's Exhibit 14**.

79. Had Defendant conducted a reasonable investigation, it would have been readily apparent that there were four complete bank statements enclosed with the NOE; the only bank statement provided that consisted of pictures was the statement covering March 23, 2019 through April 22, 2019; the documents enclosed with the NOE clearly show all the payments referenced in the NOE being withdrawn from the Borrower's bank account by Defendant; and all the payments Plaintiff claims to have made in NOE #1 were also shown in the transaction history enclosed within the Response to NOE #1. Therefore, Defendant's statement that they did not commit an error in applying Plaintiff's payments on the Loan and that the fees they imposed on the Loan were proper was insufficient.[1]

---

[1] "A servicer may request supporting documentation from a borrower in connection with the investigation of an asserted error, but *may not*: (i) Require a borrower to provide such information as a condition of investigating an asserted error; or, (ii) *Determine that no error occurred because the borrower failed to provide any requested information without conducting a reasonable investigation pursuant to paragraph (e)(1)(i)(B) of this section*." 12 C.F.R. § 1024.35(e)(2) (emphasis added).

80. To this date, Defendant has failed to correct the errors asserted through NOE #1.

81. Defendant's failure to timely respond to NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e)(3) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

82. Defendant's failure to properly respond to NOE #1 constitutes a violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

83. Defendant's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and the rights of other similarly situated borrowers and in violation of Defendant's obligations under Regulation X of RESPA. Defendant's pattern and practice as such is evidenced by their refusal to appropriately respond to and correct the errors Plaintiff alleged through NOE #1.

84. Plaintiff suffered damages as a direct and proximate result of Defendant's actions including incurring legal fees and expenses in the preparation and mailing of NOE #1 and NOE #2, and, ultimately, for the preparation, filing, and prosecution of this case to remedy Defendant's wrongful conduct.

85. Additionally, Plaintiff has suffered, and continues to suffer, significant damages including other legal expenses, anxiety, and emotional distress, as further described, *supra*.

86. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: VIOLATION OF RESPA

**[Violation of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) for failure to properly respond to a request for information]**

87. Plaintiff restates and incorporates the statements and allegations contained in paragraphs 1 through 51 in their entirety, as if fully rewritten herein.

88. 12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may

consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

89. Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

90. 12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

[A] servicer must respond to an information request by either:
(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

91. Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:
(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

92. A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. §§ 2605(k)(1)(E).

93. The RFI met the definition of a request for information. See *Plaintiff's Exhibit 7*.

94. Plaintiff sent the RFI to Defendant at the Designated Address and Defendant received the RFI at the Designated Address on September 20, 2019. See **Plaintiff's Exhibits 7-8.**

95. Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Defendant was required to provide written correspondence to Plaintiff in response to the RFI "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1).

96. Plaintiff never received any written correspondence from Defendant containing a complete life of loan transaction history for the Loan on or before the response deadline and Defendant therefore failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1) regarding the RFI.

97. Plaintiff incurred fees in having counsel prepare and send NOE #2 on her behalf to Defendant at the Designated Address, which would not have been necessary but for Defendant's failure to properly respond to the RFI. See **Plaintiff's Exhibit 15.**

98. Defendant's actions, in failing to provide a complete life of loan transaction history for the Loan to Plaintiff in response to the RFI by the response deadline, constitute a willful violation of 12 C.F.R. § 1024.36(d).

99. Defendant's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

100. As a result of Defendant's actions, Defendant is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees, including, but not limited to incurring costs and fees for the preparation and mailing of NOE #2 which would not have been necessary but for Defendant's failure to properly respond to the RFI. **Id.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kathryn R. Good prays that this Court enter its order granting judgment in her favor as follows:

A) For actual damages for Plaintiff against Defendant Specialized Loan Servicing, LLC as to all allegations contained in Counts One through Three;

B) For statutory damages of Two Thousand Dollars ($2,000.00) against Defendant Specialized Loan Servicing, LLC for each and every violation of 12 C.F.R. §§ 1024.35 and 1024.36 as alleged in Counts Two and Three;

C) For costs, and reasonable attorneys' fees; and,

D) Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Whitney P. Horton*
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
DANN LAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ *Whitney P. Horton*
Whitney P. Horton (0098224)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
DANN LAW
*Counsel for Plaintiff*